Yunchao Song (SBN 323484)
Juris Path Law Firm PC
17800 Castleton Street, Suite 316
City of Industry, CA 91748
Telephone: (626) 391-4015
Facsimile: (626) 604-0123
*paul.song@jpjplaw.com*

Attorneys for Petitioner Xiaodong Ma

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| XIAODONG MA, an individual, Petitioner;<br><br>v.<br><br>Warden of Adelanto ICE Processing Center; ANDRE QUINONES, Acting Director of Los Angeles ICE Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; TODD BLANCHE, Attorney General of the United States; MARKWAYNE MULLIN, Secretary of Homeland Security, in their official capacities,<br><br>Respondents. | **Case No.**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

Petitioner Xiaodong Ma ("Mr. Ma" or "Petitioner") (A-Number: 242-464-172), by and through the undersigned counsel, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and respectfully alleges as follows:

## INTRODUCTION

1. Petitioner is a native and citizen of the People's Republic of China presently detained at the Adelanto ICE Processing Center, Adelanto, California. Petitioner, by and through his undersigned counsel, hereby files this petition for writ of habeas corpus to compel his immediate release from immigration detention, without first being provided a due process hearing to determine

whether his detention is justified.

2. The Due Process Clause of the Fifth Amendment requires the government to provide noncitizens with notice and a hearing prior to detention. Here, Petitioner's rights were violated when he was detained without such process and continue to be violated each day that he remains detained.

## CUSTODY

3. Petitioner is currently in Respondents' physical custody. Petitioner is detained at the Adelanto ICE Processing Center, Adelanto, California. He is under Respondents' and their agents' direct control.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 2241, Article I, Section 9, Clause 2 of the United States Constitution (the "Suspension Clause"); and 28 U.S.C. § 1331, as Petitioner is presently in custody under the color of the authority of the United States, and such custody violates the Constitution, law, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241.

5. Venue lies in the Central District of California, the judicial district in which Petitioner is currently detained. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## REQUIREMENTS OF 28 U.S.C. § 2243

6. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within *three days* unless for good cause additional time, *not exceeding twenty days*, is allowed." *Id.* (emphasis added).

## THE PARTIES

7. Petitioner is a citizen of China who has resided in the United States since July 24, 2025, when Petitioner was admitted into the United States on a valid B-1/B-2 visa. Petitioner was taken into custody by immigration authorities on August 20, 2026, while appearing for a scheduled

biometrics appointment in connection with his pending I-589 application, and has remained detained ever since.

8. The Warden of Adelanto ICE Processing Center is sued in his/her official capacity. He/She has immediate physical custody of Petitioner under the facility's contract with ICE to detain noncitizens. The Warden is a legal custodian of Petitioner.

9. Respondent ANDRE QUINONES is sued in his official capacity as Acting Director of Enforcement and Removal Operations of ICE's Los Angeles Field Office. Respondent QUINONES is a legal custodian of Petitioner and has the authority to release him.

10. Respondent DAVID VENTURELLA is sued in his official capacity as Acting Director of ICE. In this capacity, Respondent VENTURELLA directs and oversees ICE's Enforcement and Removal Operations, the component agency responsible for Petitioner's detention. Respondent VENTURELLA is a legal custodian of Petitioner and has the authority to release him.

11. Respondent TODD BLANCHE is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice ("DOJ"). In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals. Respondent BLANCHE is a legal custodian of Petitioner.

12. Respondent MARKWAYNE MULLIN is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Respondent MULLIN is responsible for the implementation and enforcement of the INA and oversees ICE, the component agency responsible for Petitioner's detention. Respondent MULLIN is a legal custodian of Petitioner.

## STATEMENT OF FACTS

13. Petitioner was admitted into the United States on or about July 24, 2025, on a valid B-1/B-2 nonimmigrant visa.

14. On or about August 20, 2025, Petitioner filed a Form I-589 application for asylum and withholding of removal with United States Citizenship and Immigration Services ("USCIS"),

which remained pending with that agency until his detention.

15. Since his admission to the United States, Petitioner has lived openly and peacefully in the community and has no criminal history.

16. On or about August 20, 2026, Petitioner appeared as instructed for biometrics collection in connection with the pending I-589 application at a USCIS Application Support Center in City of Industry, California. Petitioner went to the office for his scheduled biometrics appointment and was also accompanying his pregnant wife to a medical appointment. After he arrived at the USCIS office, he was directed into a separate room.

17. While Petitioner was inside the USCIS office, ICE officers arrested him without any advance notice. Petitioner was not presented with a warrant at the time of his arrest. Petitioner informed the officers that his pregnant wife was waiting for him outside, but he was nevertheless taken into custody without being permitted to inform her.

18. Petitioner's wife remained outside waiting for him, unaware of what had happened. When Petitioner did not return, she became frightened and distressed. She subsequently suffered a miscarriage.

19. Petitioner was then transported to and delivered to Adelanto ICE Processing Center, where he has remained in continuous custody since then.

20. The Department of Homeland Security then placed Petitioner in removal proceedings. Jurisdiction over Petitioner's asylum application transferred to the Immigration Court, and those proceedings were docketed on August 21, 2026.

21. Petitioner's removal proceedings, including his application for asylum, remain pending before the Immigration Court.

22. When Petitioner was arrested, he was not presented with any warrant authorizing his detention.

23. When Petitioner was taken into custody, ICE took Petitioner's personal belongings, including his driver's license, bank cards and cell phone.

24. At no time prior to his detention was Petitioner notified that he would be taken into custody. He was not afforded advance notice and was not provided an opportunity to contest his

detention before being taken into custody.

## LEGAL FRAMEWORK

25. The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

26. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

27. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon v. Burch*, 494 U.S. at 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty . . . .").

28. Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59-61 (1993) ("We tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

29. Immigration detention is civil rather than punitive and is constitutionally permissible only insofar as it serves the Government's legitimate interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

**COUNT ONE**

**(Violation of the Procedural Due Process)**

30. Petitioner repeats and incorporates by reference the allegations set forth above.

31. Petitioner's detention violates the procedural protections guaranteed by the Due Process Clause of the Fifth Amendment. Petitioner possesses a protected liberty interest in his continued freedom from physical restraint, and by detaining him without advance notice, a pre-deprivation hearing, or any meaningful opportunity to contest the basis for his detention, Respondents deprived Petitioner of that liberty without constitutionally adequate process.

32. Evaluating the scope of Petitioner's due process rights requires a two-step inquiry: "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884- TLN-SCR, 2025 WL 1927596 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

33. Courts have repeatedly recognized that noncitizens who entered on valid visitor visas "developed a substantial liberty interest in remaining out of custody based on their lawful admission into the United States and the community ties they established since their admission." *Yuhong Ren et al v. James Janecha, et al*, Case No. 5:26-cv-04364-AJR (C.D. Cal. August 17, 2026)*; see Kharitonova v. Albarran*, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); *see also Gagik T. v. Chestnut*, et al., No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (granting release to noncitizen who entered the United States on a visitor visa, applied for asylum, and remained out-of-custody for six years); *Xiaoqin Dai v. James Janecha*,

et al. No. 5:26-cv-03966-PD (C.D. Cal. July 24, 2026) (same); *Abdeltawab v. Armant*, No. EDCV 26-01520-MWF (DTB), 2026 WL 1045564 (C.D. Cal. Apr. 13, 2026) (preliminary injunction granting release and finding liberty interest for noncitizen whose removal proceedings were administratively closed, was granted employment authorization, and then was arrested by immigration authorities for the first time)

34. Petitioner was inspected and lawfully admitted to the United States on a valid B-2 nonimmigrant visa. While at liberty, he filed a Form I-589 application for asylum and withholding of removal, lived openly in the community, maintained a record free of criminal history, and complied with the Government's requirements, including appearing as instructed for his scheduled biometrics appointment. At no point before his arrest did the Government determine that Petitioner's detention was necessary. Petitioner therefore possessed a protected liberty interest in his continued freedom from physical restraint. *See Yuhong Ren et al v. James Janecha, et al*, Case No. 5:26-cv-04364-AJR (C.D. Cal. August 17, 2026).

35. Once a protected liberty interest is established, courts determine what procedural protections are constitutionally required by applying the three-factor balancing test set forth in *Mathews v. Eldridge*: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. 319, 335 (1976).

36. The first *Mathews* factor strongly favors Petitioner. "Freedom from imprisonment, from government custody, detention, or other forms of physical restraint, lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner lived openly in the community since his admission, had a pending application for asylum and withholding of removal, and had been permitted by the Government to remain at liberty throughout that period. His interest in remaining free from physical confinement is substantial. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025).

37. The second *Mathews* factor also strongly favors Petitioner. Before his detention,

Petitioner was pursuing asylum relief through his pending Form I-589 application and had no criminal history. No circumstances demonstrated that detention had become necessary or that Petitioner had become a danger to the community or a flight risk. Yet Respondents detained Petitioner without providing him a hearing or any other process through which he could contest the necessity of his detention. Under these circumstances, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

38. The third *Mathews* factor likewise favors Petitioner. Respondents' interest in detaining Petitioner without any pre-deprivation process is minimal. Respondents inspected and admitted Petitioner into the United States and thereafter permitted him to remain at liberty. The Government's own conduct therefore undermines any asserted need to detain Petitioner without first affording him an opportunity to be heard, particularly where Respondents identified no evidence, before his detention, that Petitioner posed a danger to the community or a flight risk requiring immediate confinement. Further, additional procedural safeguards, including a hearing before a neutral decision-maker, are "one of the most basic due process protections" and would place a "de minimis . . . burden on the government," especially in light of the potential costs to the public by keeping Petitioner detained. *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated* on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). As one court has put it, "[i]n immigration court, custody hearings are routine." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

39. *Mathews* factors show that Petitioner was entitled to a hearing, and that hearing should have occurred before Petitioner was taken into custody. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985); *see also Zinermon v. Burch*, 494 U.S. at 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty . . . .").

40. Respondents provided Petitioner neither advance notice nor a pre-deprivation hearing, and no emergency or other extraordinary circumstance justified postponing process until after Petitioner had already been deprived of his liberty. Therefore, Petitioner's arrest without prior notice or a pre-deprivation hearing violated his procedural due process right. *See J.A.E.M. v.*

*Wofford*, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)).

41. Courts confronting materially similar due process violations have consistently held that immediate release, rather than a delayed post-deprivation hearing, is the appropriate remedy because it restores the *status quo* ante that existed before Respondents violated a noncitizen's constitutional rights. *Ganbat Ayurzana v. Todd Lyons*, No. 5:26-cv-02238-KES (C.D. Cal. May 13, 2026).

42. A post-detention bond hearing cannot remedy that violation because, by the time such a hearing occurs, the petitioner "will have already suffered the harm" the requested procedural safeguard was intended to prevent – potentially erroneous detention. *See, e.g., Domingo v. Kaiser*, Case No. 25-cv-05893-RFL, 2025 WL 1940179 (N.D. Cal. July 14, 2025); *Charan S. v. Warden, CA City*, Case No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"). Moreover "allowing the government to cure such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless." *Ganbat Ayurzana v. Todd Lyons*, No. 5:26-cv-02238-KES (C.D. Cal. May 13, 2026); *see also Gudavasov v. Marin*, No. 26-cv-00541-AH-MBK, 2026 WL 712827 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); *see also Eduardo Marquez Ibarra v. Kristi Noem*, No. 5:26-cv-01007-MEMF-MAA (C.D. Cal. Mar. 20, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 U.S. Dist. LEXIS 141808 (E.D. Cal. June 25, 2026) ("When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect").

43. Indeed, courts have repeatedly found that this type of due process violation warrants

not only immediate release, but also injunctive relief prohibiting further unconstitutional re-detention absent adequate procedural protections. *See, e.g., Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871 (C.D. Cal. 2026) (ordering petitioner's release and enjoining re-detention "without providing him a pre-detention hearing before a neutral decisionmaker where Respondent bears the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required"); *Nieves v. Mullin,* No. 5:26-cv-01471-DOC-DSR, 2026 WL 160709 (C.D. Cal. Apr. 1, 2026) (granting release and enjoining re-detention "unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention").

44. Accordingly, Petitioner is entitled to immediate remedial release rather than a belated bond hearing.

**COUNT TWO**

**(Violation of the Substantive Due Process)**

45. Petitioner repeats and incorporates by reference the allegations set forth above.

46. The Due Process Clause of the Fifth Amendment protects individuals against arbitrary governmental deprivation of liberty. Civil immigration detention is constitutionally permissible only when it bears a reasonable relationship to a legitimate governmental purpose and is not punitive in nature. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In the immigration context, the Government's recognized regulatory interests include ensuring a noncitizen's appearance at immigration proceedings and protecting the community from danger. *Id.*

47. Because immigration detention is civil rather than punitive, physical confinement cannot constitutionally be imposed merely as an end in itself. Rather, detention must bear a reasonable relationship to the Government's legitimate regulatory purposes. *See Zadvydas*, 533 U.S. at 690.

48. Here, Petitioner had lived openly in the community since the Government inspected and admitted him into the United States. During that period, he filed and pursued his own Form I-589 application for asylum and withholding of removal and had no criminal history. Respondents have identified no circumstances demonstrating that physical confinement became necessary to

serve a legitimate governmental purpose.

49. Respondents' detention of Petitioner, in the absence of circumstances demonstrating that such confinement is reasonably necessary to prevent flight or protect the community, is excessive in relation to the Government's legitimate civil regulatory interests and constitutes an arbitrary deprivation of Petitioner's liberty.

50. Accordingly, Petitioner's detention violates the substantive component of the Due Process Clause of the Fifth Amendment. Petitioner is therefore entitled to a writ of habeas corpus ordering his immediate release from Respondents' custody.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this matter;
2. Issue the writ of habeas corpus and order Respondents to show cause within three days why the requested relief should not be granted;
3. Enjoin Respondents from transferring Petitioner from the jurisdiction of this District pending these proceedings;
4. Declare that Respondents' detention of Petitioner violates the Due Process Clause of the Fifth Amendment;
5. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately;
6. In the alternative, only if the Court concludes that Petitioner is not legally entitled to immediate release under the present circumstances based on a specific legal authority, order Respondents to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) before an Immigration Judge, at which the government bears the burden of establishing by clear and convincing evidence that continued detention is appropriate to prevent his flight or to protect the public;
7. Order Respondents to return all of Petitioner's personal belongings, including his driver's license, bank cards, and cell phone;
8. Upon release, prohibit Respondents from imposing any conditions of supervision, including electronic monitoring or a GPS ankle monitor, absent a hearing consistent

with due process;

9. Upon release, enjoin Respondents from re-arresting, or re-detaining Petitioner absent lawful process, including a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that detention is appropriate to prevent his flight or to protect the public;
10. Require Respondents, should they choose to conduct such a hearing, to provide Petitioner with reasonable advance notice of the time and place of the hearing;
11. Enjoin Petitioner's removal from the United States pending a final decision on this habeas action;
12. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act and any other applicable authority;
13. Grant further relief as the Court finds just and proper.

Dated: September 25, 2026

Juris Path Law Firm, PC

*/s/Yunchao Song*
Yunchao Song, Esq.
Attorneys for Petitioner Xiaodong Ma