UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-05707-KK-DFMx** | Date: | October 8, 2026 |
| Title: | *Xiaodong Ma v. Warden of Adelanto ICE Processing Center, et al.* | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Dominique Carr | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Petitioner(s): | Attorney(s) Present for Respondent(s): |
| None Present | None Present |

**Proceedings: (In Chambers) Order GRANTING Petition for Writ of Habeas Corpus [Dkt. 1]**

## I. INTRODUCTION

On September 26, 2026, petitioner Xiaodong Ma ("Petitioner"), who is currently detained in the custody of U.S. Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Warden of Adelanto ICE Processing Center, Andre Quinones, David Venturella, Todd Blanche, and Markwayne Mullin (collectively, "Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Petition is **GRANTED**.

## II. BACKGROUND

### A. RELEVANT FACTS

Petitioner is a citizen of the People's Republic of China. Pet. ¶¶ 1, 7. Petitioner lawfully entered the United States on a valid B-1/B-2 nonimmigrant visa on or about July 24, 2025. Id. ¶ 13. On or about August 20, 2025, Petitioner filed a Form I-589 application for asylum with the U.S.

Citizenship and Immigration Services ("USCIS").[1] Id. ¶ 14. Thereafter, he "has lived openly and peacefully in the community and has no criminal history." Id. ¶ 15.

On August 20, 2026, in compliance with USCIS instructions, Petitioner appeared in person for biometrics collection at a USCIS Application Support Center in City of Industry, California, accompanied by his then-pregnant wife. Id. ¶ 16. Upon presenting himself for biometrics collection, "ICE officers arrested him without any advance notice" and without presenting an arrest warrant. Id. ¶¶ 17, 22. Petitioner was transported to the Adelanto ICE Processing Center and placed in removal proceedings. Id. ¶ 19.

Petitioner has remained in custody at the Adelanto ICE Processing Center since his arrest. Id. Petitioner has not received a bond hearing, nor was he "provided an opportunity to contest his detention before being taken into custody." Id. ¶ 24.

## B. PROCEDURAL HISTORY

On September 26, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

**Count One:** Violation of Procedural Due Process; and

**Count Two:** Violation of Substantive Due Process.

Id. ¶¶ 30-50. Petitioner seeks an order requiring his immediate release from immigration custody or, in the alternative, a bond hearing at which the government bears the burden of justifying his detention by clear and convincing evidence. Id. at 11.

On October 5, 2026, Respondents filed a less than one-and-a-half page Response, conceding Petitioner is entitled to an initial bond hearing but has not yet requested one. Dkt. 7, Response ("Resp.") at 2. Aside from administrative exhaustion,[2] Respondents do not mention due process or otherwise challenge the alleged facts or the merits of Petitioner's grounds for relief. See id. at 2-3.

On October 7, 2026, Petitioner filed a Reply. Dkt. 8, Reply.

This matter, thus, stands submitted.

---

[1] According to Respondents' records, Petitioner first applied for asylum on September 15, 2025, and reapplied on July 24, 2026. Dkt. 7-1, Resp. Ex. A at 3.

[2] As to Respondents' exhaustion argument, aside from Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026), which does not discuss exhaustion or futility, Respondents cite no authority for their argument. See Resp. at 2. Instead, exhaustion of administrative remedies in habeas proceedings is a prudential matter. Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Because constitutional claims are outside the jurisdiction of immigration courts, "requiring administrative exhaustion would be futile" for violations of due process. Hernandez v. Mullin, No. EDCV 26-00585-JAK-ADSx, 2026 WL 846037, at *7 (C.D. Cal. Mar. 24, 2026). Accordingly, the Court excuses administrative exhaustion as futile in this case. See id. at *8 (excusing failure to exhaust where "continued detention" in violation of due process rights "constitute[s] irreparable harm" providing standalone "basis to waive exhaustion").

## III.
## DISCUSSION

### A. APPLICABLE LAW

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As the Supreme Court recently reaffirmed, "the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976). Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057). Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Id. (citation modified) (quoting Shinault, 782 F.3d at 1057).

### B. ANALYSIS

Here, applying the Mathews test, the Court finds Respondents violated Petitioner's right to procedural due process by detaining him without a pre-deprivation hearing.[3]

First, Petitioner has a substantial private interest in remaining out of immigration custody. Petitioner lawfully entered the United States in July 2025 and promptly thereafter filed his asylum application. Pet. ¶¶ 13-14. According to Respondents' records, Petitioner's B-1/B-2 nonimmigrant visa expired on January 23, 2026. Resp. Ex. A at 3. Petitioner first applied for asylum on September 15, 2025, and reapplied on July 24, 2026, which is still pending. Id. Petitioner, thus, knowingly and intentionally alerted Respondents to his presence in the country, yet Respondents "made a decision not to detain [him]" during the pendency of his application. Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (emphasis removed). Moreover, Petitioner "lived openly in the community, maintained a record free of criminal history, and complied with the Government's requirements, including appearing as instructed for his scheduled biometrics appointment." Pet. ¶ 34. Hence, for more than a year, Respondents, with "full

[3] Because the Court finds Petitioner is entitled to relief based on his procedural due process claim, the Court declines to address Petitioner's substantive due process claim.

knowledge of Petitioner's identity, immigration status[,] and location during the pendency of [his] immigration application[] . . . continuously elected not to detain [him] while exercising authority over [his] legal proceedings." Zhou v. Janecka, No. EDCV 26-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026). This decision to allow Petitioner to live freely in the community gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004).

Additionally, while Respondents' decision not to detain Petitioner was discretionary, see 8 U.S.C. § 1226(a), that decision nonetheless created a protected interest in remaining at liberty while the government processed his asylum application. See Zhou, 2026 WL 2365550, at *4 (collecting cases finding a protectable interest where the government decided "not to detain [a petitioner] or otherwise impede [their] liberty while exercising authority over [them] for purposes of adjudicating [their] applications for immigration relief"); Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Petitioner relied on this liberty interest to live freely "with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. The length of Petitioner's freedom pending the adjudication of his asylum application, while less extensive than other individuals, nonetheless strengthens his interest in his continued freedom from immigration detention. See Doe, 787 F. Supp. 3d at 1093 (finding the government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest). Accordingly, Petitioner establishes a significant private interest.

Second, the risk of erroneous deprivation is high without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). As noted, the government permitted Petitioner to live openly for over a year after he filed his asylum application. See Pet. ¶¶ 14-16. Additionally, Petitioner maintained a clear criminal record. Id. ¶ 15; Resp. Ex. A at 3. The evidence before the Court thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk. See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). Where, as here, a petitioner "has not received a hearing or other process prior to the revocation of her liberty, 'the risk of an erroneous deprivation of liberty is high.'" Zhou, 2026 WL 2365550, at *6 (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)). In contrast, without the procedural safeguard of a pre-detention hearing, Respondents could simply detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest. See Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief

could result in the petitioner's indefinite detention "without any process"). Hence, Petitioner demonstrates a high risk of erroneous deprivation of his liberty without a pre-deprivation hearing.

Third, Respondents' interest in detaining Petitioner and the burden of a pre-detention hearing are both minimal. In their Response, the only justification Respondents offer for Petitioner's detention is his visa overstay. Resp. at 2. However, it is again undisputed Respondents were aware of Petitioner's potential to overstay his visa since at least September 2025, after his asylum application was filed. See Pet. ¶ 14; Resp. Ex. A at 3. Additionally, after Petitioner's visa expired in January 2026, he again alerted Respondents to his presence by refiling his asylum application in July 2026. Resp. Ex. A at 3. Respondents do not identify any material change in circumstances justifying Petitioner's detention. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). In any event, the fact "the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Therefore, Respondents have minimal interest in detaining Petitioner without a pre-detention hearing. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (noting government has power to re-arrest petitioner at any point "but its interest in doing so without a hearing is low").

Finally, while Respondents would have expended resources in providing Petitioner with notice and a hearing before detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." E.A. T.-B., 795 F. Supp. 3d at 1324. Additionally, custody hearings in immigration court are "routine" and impose only a "minimal" cost. Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)). Indeed, Respondents' delay in arresting Petitioner for seven months after his visa expired only confirms "a pre-deprivation hearing was entirely feasible and required." Galeano-Ariza v. Warden, No. EDCV 26-04081-HDV-BFMx, 2026 WL 2491404, at *4 (C.D. Cal. Aug. 24, 2026). Hence, Respondents' interest in detaining Petitioner without a pre-detention hearing is low.

In sum, the Court finds Petitioner has established a significant liberty interest in his freedom from immigration custody, a high risk of erroneous deprivation, and a minimal countervailing governmental interest in his detention, such that he was entitled to a pre-deprivation hearing before being detained. Accordingly, Petitioner's detention without a pre-deprivation hearing violates his right to procedural due process guaranteed by the Fifth Amendment, and Petitioner is entitled to immediate release from Respondents' custody.

///

///

///

///

///

## IV.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. The Petition for Writ of Habeas Corpus is **GRANTED**;
2. Respondents are **ORDERED** to immediately release Petitioner, Xiaodong Ma (A# 242-464-172), from custody;
3. Respondents are **ORDERED** to return any confiscated property and documents to Petitioner upon his release;
4. Respondents are permanently **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1226 without providing him with a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required; and
5. Respondents are **ORDERED** to file a status report regarding their compliance with this Order no later than three (3) court days of Petitioner's release.

**IT IS SO ORDERED**.